United States District Court
Southern District of Texas
**ENTERED**
February 05, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DAVID GRAYSON | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00061 |
| | § | |
| DSM NUTRITIONAL PRODUCTS, | § | |
| LLC | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Leave to Amend Complaint and to Remand Action ("Motion for Leave to Amend").  Dkt. 18.  The Motion for Leave to Amend has been referred to this Court by United States District Court Judge George C. Hanks, Jr. Dkt. 23.  For the reasons set forth below, the Court recommends that the Motion for Leave to Amend be GRANTED, and this action be REMANDED to the 149th Judicial District Court of Brazoria County, Texas.

## BACKGROUND

Plaintiff David Grayson ("Grayson") worked as a delivery vendor, filling vending machines at various locations in the Freeport, Texas area.  On October 4, 2017, Grayson made a delivery at a facility owned by DSM Nutritional Products, LLC ("DSM").  To make the delivery, Grayson had to use the freight elevator at DSM's facility.  Grayson entered the elevator without incident.  When Grayson attempted to exit the elevator, however, an

interior gate slammed down on his left hand, causing severe injuries, including permanent nerve damage.

On January 9, 2018, Grayson filed this lawsuit against DSM in the 149th Judicial District Court of Brazoria County, Texas. In the petition, Grayson complains that one of the interior gates in DSM's freight elevator was malfunctioning and in need of repairs on the day of his visit, but DSM failed to provide him with any notice or warning of the danger. Grayson brings causes of action for negligence and gross negligence against DSM.

DSM removed the lawsuit to this Court on February 26, 2018, based on diversity jurisdiction. Grayson and DSM are citizens of different states: Grayson is a Texas citizen; DSM is a corporation organized under the laws of Delaware.

On March 3, 2018, a week after the case had been removed to federal court, Grayson's counsel sent correspondence to DSM's attorneys requesting the identity of any elevator maintenance contractor at DSM's facility. DSM did not respond for several months. The first-time Grayson discovered that Delta Rigging & Tools Inc. ("Delta Rigging") had a contract to perform elevator maintenance at DSM's facility is when DSM's counsel provided such information in a June 18, 2018 telephone conversation.

After learning the identity of Delta Rigging, Grayson did not immediately seek to add the company as a defendant. This is because, according to Grayson's counsel, the Federal Rules of Civil Procedure and applicable ethical rules require the lawyers to ensure that a good faith basis and reasonable likelihood of evidentiary support exist before seeking to join Delta Rigging to the case.

In preparation for the initial scheduling conference in this case, the parties submitted a Joint Case Management Plan on July 6, 2018, which stated, in part: "Plaintiff may seek to join Delta Rigging & Tools, Inc., the party responsible for making repairs to the elevator, if, through the course of discovery, Plaintiff identifies a good-faith factual basis for the joinder." Dkt. 9 at 2.

Grayson contends that through the course of discovery (both document production and the depositions of two DSM employees) he learned that Delta Rigging "knew that the malfunctioning gate was in need of repairs but nonetheless failed to place any warnings on the interior gate, disable the gate, or take any steps to make the dangerous condition safe." Dkt. 18 at 4. Once it became clear that Delta Rigging should be joined as a defendant in this case, Grayson argues, he promptly asked the Court to permit him to amend his complaint. To that end, Grayson filed this Motion for Leave to Amend on October 19, 2018, seeking to add Delta Rigging as a defendant for breaching a duty of ordinary care. Because the addition of Delta Rigging as a defendant would defeat diversity jurisdiction, Grayson further argues that the Court must remand the case to state court.

DSM opposes Grayson's effort to add Delta Rigging as a defendant, arguing that "the effort to join Delta Rigging is futile and serves no purpose other than as an inappropriate basis to try to defeat diversity jurisdiction." Dkt. 19 at 3.

## LEGAL STANDARD

Federal court practitioners are well-aware of the liberal pleading standard that applies when a party seeks to amend a complaint. Indeed, Rule 15(a) specifically provides that "[t]he court should freely give leave [to amend] when justice so requires." FED. R.

3

CIV. P. 15(a)(2). With this rule in mind, the United States Supreme Court has held that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Although the general rule is that leave to amend a complaint shall be readily allowed, a unique situation arises when a plaintiff seeks to amend a complaint by adding a nondiverse party to a case previously removed to federal court. In such a case, the court's decision on whether to permit the filing of an amended complaint will determine whether the case ultimately proceeds in state court or in federal court. If the district court permits joinder of a nondiverse defendant, it must remand the case to state court. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). If joinder is not permitted, the federal court retains jurisdiction. *See id.*

"[W]hen confronted with an amendment to add a nondiverse nonindispensable party," the district court "should use its discretion in deciding whether to allow that party to be added." *Id.* (collecting cases). *See also* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). Because of the importance such an amendment will have on the forum in which the case is litigated, the Fifth Circuit has held that the district court should "scrutinize that amendment more closely than an ordinary amendment" and "consider a number of

factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Hensgens*, 833 F.2d at 1182.

To determine whether to permit an amendment that would add a diversity-defeating defendant, a district court must balance the equities using the four factors set out in *Hensgens. See id.* Those four factors are: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other equitable factors. *See id. See also Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010) ("When a plaintiff seeks to add a non-diverse defendant whose joinder would defeat federal jurisdiction, the district court must consider the *Hensgens* factors.") (citation omitted).

## APPLICATION OF THE *HENSGENS* FACTORS

To determine whether to allow Grayson to add Delta Rigging, a defendant whose joinder would destroy diversity jurisdiction, this Court must carefully consider the *Hensgens* factors.

**Factor 1: Is the primary purpose of the amendment to defeat diversity jurisdiction?** "In analyzing the first *Hensgens* factor, courts take into account considerations such as whether the plaintiff knew or should have known the identity of the nondiverse defendant when the state court suit was filed [and] whether the plaintiff states a valid claim against the nondiverse defendant . . . ." *Agyei v. Endurance Power Prods., Inc.*, 198 F. Supp. 3d 764, 770 (S.D. Tex. 2016) (collecting cases). The Court will separately evaluate both these considerations.

5

*Whether the plaintiff knew or should have known the identity of the nondiverse defendant when the state court suit was filed*:  Not surprisingly, courts generally hold that a plaintiff's failure to join a nondiverse defendant prior to removal when the plaintiff knew of a nondiverse defendant's identity and activities suggests that the true purpose behind the amendment is to destroy diversity jurisdiction.  *See, e.g., In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 433, 435–36 (E.D. Tex. 1995) (granting leave to add non-diverse party whose identity was revealed by post-removal discovery but denying leave to add non-diverse party where plaintiffs "could have easily done so when the suit was originally filed in state court").

In the present case, there is no suggestion that Grayson knew of Delta Rigging's identity at the time the lawsuit was filed in state court.  Moreover, there is no reason to think that Grayson should have known the name of the elevator maintenance contractor at DSM's facility at the time he filed suit.  Grayson was simply a delivery vendor who happened to get injured when exiting a freight elevator.  Once this lawsuit was filed, Grayson diligently sought the identity of the elevator maintenance contractor from DSM and then timely pursued discovery to determine if there were enough facts to bring a cognizable claim against Delta Rigging.  This course of conduct strongly suggests that the purpose of Grayson's proposed amendment is not simply to defeat diversity jurisdiction.

*Whether the plaintiff states a valid claim against the nondiverse defendant*:  The next issue the Court must address is whether Grayson has stated a valid or colorable claim against Delta Rigging.  *See Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999) (a defendant "has an opportunity at the time joinder is considered to prevent joinder by

arguing that there is no colorable claim against the party the plaintiff is seeking to join"). This analysis is important is because it is highly unlikely that the primary purpose of an amendment is to destroy diversity jurisdiction if the amendment presents a valid or colorable claim. *See Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991). Whether the amended pleading presents a valid claim against Delta Rigging is of heightened interest in the present case since it is the only reason DSM asks the Court to deny joinder.

To state a valid claim under the first *Hensgens* factor, the district court must determine that the proposed amendment is not futile. *See Wilson*, 602 F.3d at 368. "[I]t is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant." *Id.* The standard a district court should utilize to determine futility is the same that applies to a motion to dismiss under Rule 12(b)(6): Does the proposed amended complaint state a claim upon which relief can be granted? *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.")). The question, therefore, is whether a plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" when the pleaded

facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

From a liability standpoint, DSM argues that Delta Rigging could only be held responsible for damages if it "created" the allegedly dangerous condition. Because Grayson does not advance any allegations that Delta Rigging "created" the dangerous condition in the elevator, DSM maintains that any claim against Delta Rigging would be futile. The Court respectfully disagrees. For Delta Rigging to be held responsible under a negligence cause of action, Grayson does not have to plead and prove that Delta Rigging created the allegedly defective condition. Instead, Texas law provides that an entity or individual assuming control over the maintenance and repair of an elevator becomes charged with the common law duty to elevator users to exercise ordinary care to maintain the elevators in a condition of reasonable safety for use. *See, e.g., Fox v. Dallas Hotel Co.*, 240 S.W. 517, 520 (Tex. 1922) ("Upon defendant . . . taking over the control and repair of the elevators . . . it became charged with the duty . . .to exercise ordinary care to maintain the elevators in a condition of reasonable safety for use."), *overruled on other grounds*, *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981); *Requena v. Otis Elevator Co.*, 305 S.W.3d 156, 163 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("We conclude that Otis, to the extent that it acted as the agent of the elevator's owner in charge of maintenance and repairs, owed Requena only a duty to exercise ordinary care to maintain the elevator in a condition of reasonable safety for use."). Applying the familiar Rule 12(b)(6) dismissal standard to the present case, there is no question that Grayson has adequately stated a claim against Delta Rigging. Grayson may not ultimately prevail against Delta Rigging, but he

has certainly satisfied the Rule 12(b)(6) pleading standard.  He has alleged that Delta Rigging provided maintenance for the elevator at issue and, as a result, owed a duty to potential elevator users to prevent the elevator from operating once it learned that the elevator was malfunctioning.  As a direct result of Delta Rigging's alleged breach of duty, Grayson contends that he entered the elevator and suffered personal injuries for which he seeks redress in this lawsuit.  In sum, the allegations against Delta Rigging present a claim that is plausible on its face and certainly not futile.  Therefore, the first *Hensgens* factor weighs in favor of permitting joinder of Delta Rigging.

**Factor 2:  Was Grayson dilatory in asking for an amendment?**  As noted above, Grayson did not delay in seeking to add Delta Rigging to this case.  To the contrary, he asked the Court for permission to join Delta Rigging as soon as he obtained enough information through the discovery process to assert a viable negligence claim against Delta Rigging.  DSM does not dispute this point for the purposes of the *Hensgens* analysis.  As a result, this factor also supports allowing Grayson to join Delta Rigging to this lawsuit.

**Factor 3:  Whether plaintiff will be significantly injured if amendment is not allowed?**  The third *Hensgens* factor concerns whether a plaintiff would be "significantly injured" if the court does not permit it to amend the complaint to add the nondiverse defendant.  *Hensgens*, 833 F.2d at 1182.  In analyzing the third *Hensgens* factor, courts look to "whether the possibility of a separate state court proceeding weighs against denying the proposed amendment because of the inefficiency of parallel proceedings or because such proceedings would place a financial burden on the plaintiff."  *Agyei*, 198 F. Supp. 3d at 777 (citation omitted).  Grayson strongly argues that he would be significantly injured

9

by the expense of having to litigate his claims against DSM and Delta Rigging in a piecemeal fashion. Indeed, it makes little sense to require Grayson to pursue one action in federal court against DSM and a separate proceeding in state court against Delta Rigging. Additionally, Grayson notes that judicial resources would be wasted, and inconsistent results are likely to occur if the Court denies joinder. The undersigned agrees. To borrow the language from another court:

> After considering judicial efficiency, additional costs to Plaintiff, and the possibility of inconsistent [sic] results between parallel state and federal actions arising out of the same series of transactions or occurrences, the Court should find these matters "militate in favor of not requiring" Plaintiff to pursue its separate claims in different forums and "that—on balance— [Plaintiff] will be prejudiced, and judicial economy disserved, by denial of the amendment."

*CCI Ventures, Inc. v. Berkley Nat'l Ins. Co.*, No. 1:17-CV-0019-BL; 2018 WL 3371540, at *10 (N.D. Tex. Apr. 12, 2018) (quoting *McNeel v. Kemper Cas. Ins. Co.*, No. 3:04-CV-0734, 2004 WL 1635757, at *4 (N.D. Tex. July 21, 2004)). The same analysis applies with equal force to this case, favoring amendment so all the related claims can be brought at one time in one lawsuit.

**Factor 4: Other equitable factors?** The purpose of the fourth *Hensgens* factor is to assess whether there are "any other factors bearing on the equities." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 769 (5th Cir. 2016) (citing *Hensgens*, 833 F.2d at 1182). The Court does not find any such factors to exist, and DSM does not identify any equitable reason to deny Grayson the opportunity to amend this complaint to add Delta Rigging as a defendant.

After considering the *Hensgens* factors, the Court finds that they weigh strongly in favor of allowing amendment. In reaching this conclusion, the Court holds that defeating federal jurisdiction was not Grayson's purpose in seeking to add Delta Rigging as a defendant.

## CONCLUSION AND RECOMMENDATION

The Court concludes that application of the *Hensgens* factors counsels in favor of permitting joinder. The Court, therefore, recommends that Plaintiff's request to amend the Complaint be granted. Because amendment destroys complete diversity, the Court further recommends that Plaintiff's request to remand the case also be granted, and the case be remanded to the 149th District Court, Brazoria County, for further proceedings.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 5th day of February, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE